IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **VANESSA ISRAELSON,** individually and all for others similarly situated<br>735 S Westview Circle<br>Andover, KS 67002,<br><br>**and**<br><br>**DONNA LEVAN,** individually and for others similarly situated<br>1200 Whippoorwill Lane<br>Corbin, KY 40701,<br><br>Plaintiffs,<br><br>-vs-<br><br>**INMATE CALLING SOLUTIONS, LLC (dba IC SOLUTIONS),**<br>c/o Cogency Global Inc.<br>2101 SW 21st St.<br>Topeka, KS 66604<br><br>Defendant. | CASE NO.:<br><br>JUDGE: _____<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Vanessa Israelson and Donna Levan on their own behalf and on behalf of all other persons similarly situated, for their class action complaint against Defendant Inmate Calling Solutions, LLC (hereafter "Defendant" or "IC Solutions") state:

1. Defendant IC Solutions is a foreign corporation in good standing licensed to provide telephone and related services for detention and other facilities, in Kansas and other states.

2. Defendant is, or at a point in time relevant to this case was, licensed to do business in Kansas as a registered foreign corporation.

3. Defendant maintains operations, equipment, and personnel in Kansas for the conduct of its usual and customary business, including providing telephone and related services.

1

## PARTIES

4. Plaintiff Vanessa Israelson is a resident and citizen of the State of Kansas.

5. Plaintiff Donna Levan is a resident and citizen of the State of Kentucky.

6. Defendant is a foreign corporation headquartered in Texas. Defendant is a citizen of Texas. It may be served with process by serving its registered agent, Cogency Global Inc., 2101 SW 21st St., Topeka, KS 66604.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2), known as the Class Action Fairness Act of 2005 ("CAFA"). There are more than 100 members in the proposed class, at least one member of the proposed class has state citizenship that is different than Defendant, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendant as Defendant has sufficient minimum contacts with the state of Kansas, is authorized to do business in Kansas, and has availed itself of the privilege of conducting business in the State of Kansas.

9. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because Defendant has its agent for service of process in this District, for conducting business in this state, including the conduct alleged in this complaint. Venue is also proper pursuant to 28 U.S.C. §1391(c) because Defendant is a corporation deemed to reside in this District, with the conduct giving rise to this complaint having occurred in this District.

## THE WRONGFUL CONDUCT

10. This case involves systematic and fraudulent charging of a falsely stated amount of "tax" to the named plaintiffs and the putative class members.

11. Defendant intentionally and fraudulently made affirmative misrepresentations to its customers to conceal its unlawful conduct and avoid lawsuits of this nature.

12. Defendant lies to its customers in itemizing charges to include a stated amount of "tax," knowing the amount collected and affirmatively represented as a "tax" was higher than the authorized tax rate.

13. This type of practice—whether its charging customers for inflated fees like "tax"; "up-charging" customers more than the amount actually paid to third parties; or "manufacturing" amounts that do not exist (often called "junk fees")—is a billion-dollar scam on American consumers.

14. The United States Federal Trade Commission reports that, "American consumers, workers, and small businesses today are swamped with junk fees that frustrate consumers, erode trust, impair comparison shopping, and facilitate inflation." The Federal Trade Commission uses the term "junk fees" to refer to "unfair or deceptive fees that are charged for goods or services that have little or no added value to the consumer, including goods or services that consumers would reasonably assume to be included within the overall advertised price; the term also encompasses 'hidden fees,' which are fees for goods or services that are deceptive or unfair, including because they are disclosed only at a later stage in the consumer's purchasing process or not at all, whether or not the fees are described as corresponding to goods or services that have independent value to the consumer."[1]

---

[1] Federal Trade Commission, 16 CFR Part 464, Unfair or Deceptive Fees Trade Regulation Rule, Commission Matter No. R207011 (last viewed January 4, 2024); https://www.ftc.gov/system/files/ftc_gov/pdf/R207011UnfairDeceptiveFeesANPR.pdf

15. These unlawful practices victimize Americans daily, preying on the innocence of the consumer along with the complicated nature of financial transactions. In most cases, including the present scam, the victim has no way to know if a particular item (out of many on a bill) is unlawful, inflated, or simple bogus.

16. This practice by merchants is solely to make money by cheating customers. According to the Consumer Financial Protection Bureau, this fraud of charging consumers "junk fees" is found in charges that "inflate prices," charges that "increase costs" of products and services, and, as here, "mystery fees on phone and cable bills. *** Junk fees drain tens of billions of dollars per year from Americans' budgets[.]"[2]

17. As a result, charging customers amounts the supplier knows are non-existent, inflated, or misrepresented is actionable fraud. *In re First Alliance Mortg. Co*., 298 B.R. 652, 668, (C.D. Cal. 2003) (finding mislabeled or hidden junk fees to be fraudulent); *Watts v. Jackson Hewitt Tax Service Inc.*, 579 F. Supp. 2d 334, 335 (E.D.N.Y. 2008) (fraud sufficiently plead where defendants allegedly charged fees which, through non-disclosure of the basis for the amounts, prevented plaintiffs from discovering the fraud).

18. With the specific intent to cheat customers, Defendant includes a stated amount labeled "tax" on its statement to the named plaintiffs and the members of the putative class.

19. Telephone calls are subject to taxes levied at the location where the call originates (here, the prison), not where the call is received.

20. Instead, for calls originating from Kansas prisons, for example, Plaintiff Vanessa Israelson was charged "tax" at the rate of approximately 20%, while named Plaintiff Donna Levan

---

[2] Consumer Financial Protection Bureau Blog (Feb. 2, 2022) (last vitied January 4, 2024); https://www.consumerfinance.gov/about-us/blog/hidden-cost-junk-fees/

was charged "tax" at *double* that amount, more than 40%. See, Exhibits 1 and 2, attached hereto and incorporated herein.

21. Defendant lied to its customers both in the amount listed, and the label used.

22. The term "tax" refers to a charge assessed by the government which the customer is obligated to pay. The U.S. Supreme Court has stated that a "tax is an enforced contribution to provide for the support of government." *U.S. v. Reorganized CF & I Fabricators of Utah, Inc*., 518 U.S. 213, 224 (1996) (quoting *United States v. La Franca,* 282 U.S. 568, 572 (1931)). That is, payment of an amount for "tax" is something a reasonable person would believe is not optional, must be paid, and the stated amount is the actual amount due for the tax.

23. A reasonable person would understand and believe the amount listed for "tax" was the amount assessed by and paid to the government on the transaction; not a false rate, not an inflated amount, and not a "profit center" for Defendant.

24. In fact, the charge here was exactly that: a false amount, an inflated amount, and a charge secretly and deceptively used as a profit center for Defendant.

25. Defendant fraudulently misrepresented the stated amount as the amount of "tax," with the intent to deceive its customers and prevent them from discovering Defendant's overcharging.

26. For example, if Defendant had labeled the stated amount, or any part of it, as "junk fee," or "extra upcharge," customers would have inquired, complained, or simply refused to pay it. By falsely labeling the stated amount as "tax," Defendant intended and expected customers would not question, complain or refuse.

27. Defendant accomplished its goal of having customers give Defendant the money to pay the stated amount of 'tax,' when Defendant knew full well that the stated amount paid was not for 'tax,' and rather the payment had been accomplished by Defendant's fraud.

    A.    **Interference with the administration of justice and harm to the public fisc and society.**

28. This misconduct not only harms and damages the named Plaintiffs and the putative class members, it interferes with the administration of justice, harms society, and defrauds the public fisc.

29. A large portion of inmate calls are made by the inmates to retained or appointed Counsel for legal reasons dealing with pending criminal proceedings, appeals, parole, and other matters that are critical to the administration of justice.

30. Defendant does not exclude those calls from its overcharging scheme.

31. Legal counsel, including those appointed by the Court, and those serving the state and federal Public Defender's office, must pay (the same as family members) for the ability to speak by phone with their clients who are incarcerated in facilities serviced by Defendant.

32. Those attorneys and those agencies often rely on public funding for their budgets and their work representing the inmates, in a public system that is seriously underfunded.[3]

33. Adding to this crisis a further burden of fraudulent, padded charges by Defendant's scheme harms the entire system, and harms the general public whose taxes are wasted paying those overcharges.

34. There is not only private interest, but equally a compelling public policy, to stopping this misconduct and fraud by Defendant.

---

[3] https://www.usatoday.com/story/news/politics/2023/03/17/public-defenders-scotus-ruling/11479074002/?gnt-cfr=1

**B.     Plaintiff Israelson's transaction.**

35. Plaintiff Israelson is the mother of an inmate whose telephone and related services for their detention facility are provided by Defendant.

36. In order to have calls with her 19-year-old son in prison, Plaintiff Israelson was required to use the services of Defendant. Without phone access through Defendant, Plaintiff would not be able to have those meaningful contacts with her son.

37. On August 1, 2023, and other times, Plaintiff Israelson deposited funds into her account to allow calls with her son in prison through Defendant's system.

38. Defendant issued statements to Plaintiff Israelson for the purchase of account credits for calls.

39. They uniformly appear with the following format, listing a "Payment ID," a "Date," a "Status," a "Reference Number," an "Agency," a "Phone [number]," an "Amount, Tax, Fee, and Total," and a "Card Type and Card Number":



40. Defendant drafted the wording and terms used, and the named Plaintiffs and members of the putative class had nothing to do with the choice of the wording and terms used.

41. In each, Defendant represented that the user owed and had paid a stated amount for "tax" for making the call. Defendant also represents that $0.00 is paid in fees.

C. **Plaintiff Levan's transaction.**

42. Donna Levan is a family member of an inmate whose telephone and related services for their detention facility are provided by Defendant.

43. In order to have calls with her family member in prison, Plaintiff Donna Levan was required to use the services of Defendant.

44. On November 10, 2023, and other times, Plaintiff Levan added funds to her prepaid phone

8

account on Defendant's system to allow calls with her family member in prison.

45. Defendant issued statements to Plaintiff Levan for each of those fund deposits.

46. They uniformly appear as follows, with the same categories of information as Israelson's:



47. In each, Defendant represented that the user owed and paid a stated amount for "tax" for making the call.

D. **Putative Class Member transactions.**

48. The putative class members likewise all have friends, family members, or other connections in correctional facilities where telephone and related services are provided by Defendant.

49. In order to have calls with those in prison, the putative class members used the services of Defendant.

50. On various dates during the class period, the putative class members added funds to phone accounts through Defendant's system.

51. Defendant issued statements to the putative class members for each of those purchases.

9

52. They uniformly appear as follows, likewise with the same categories of information as Levan's and Israelson's:

 

53. In each, Defendant represented that the user owed and paid a stated amount for "tax" for making the call.

54. The named Plaintiffs and the putative class members paid Defendant the bogus amount of "tax."

55. As a direct and proximate result, the named Plaintiffs and the putative class members suffered concrete harm, loss, and damage in an amount greater than $5 million dollars, exclusive of interest and costs.

**COUNT I**
**BREACH OF CONTRACT**

56. Plaintiffs restate and incorporate by reference all preceding allegations.

57. The named Plaintiffs entered a contract with Defendant, whereby Defendant would provide, and the named Plaintiffs would pay for, a prepaid collect account to fund calls

placed by an inmate described above.

58. The rates for the calls are party of the contract, and are specifically defined on Defendant's website at the rate calculator at https://icsonline.icsolutions.com/rates

59. The rate calculator provides a stated rate based on input from the user in four fields: 1) phone number; 2) agency name; 3) facility name; and 4) minutes of the phone call.

60. Upon entering the required data, the rate calculator then provides the final cost of the call, followed by the term "plus any applicable taxes and fees."

61. By this contractual undertaking, the parties agreed to the rate for the services provided. The parties also agreed for the payment of applicable taxes and fees.

62. The named Plaintiffs do not have a copy of the contract, but Defendant does.

63. By charging the Named Plaintiffs the amount set forth on the line listed as "tax," Defendant charged Plaintiffs and the putative class members more than the rate agreed for the services rendered and/or more than applicable taxes, and thereby breached its obligations to Plaintiffs and the putative class members under that contract.

64. Specifically, Defendant charged and collected an amount which was not due from the named Plaintiffs under that contract, to wit, the stated amount of the charge for "tax."

65. Defendant did the same to the putative class members, and thereby breached its obligations to the putative class members under that contract.

66. Plaintiffs and all putative class members satisfied or discharged all conditions precedent to Defendant's obligations under the contract, or same were waived.

67. As a direct and proximate result of Defendant's breach of its obligations, Plaintiffs and the class members have been injured, harmed, and damaged in amounts to be established at trial, plus interest and costs.

11

68. As a direct and proximate result, the named Plaintiffs and the putative class members suffered concrete harm, loss, and damage in an amount greater than $5 million dollars, exclusive of interest and costs.

## COUNT II
## UNJUST ENRICHMENT

69. Plaintiffs restate and incorporate by reference all preceding allegations.

70. This count is pled in the alternative to Count I, as permitted by Fed. R. Civ. P. 8.

71. Plaintiffs conferred a benefit on Defendant by paying the amount listed as "tax."

72. Defendant is aware that Plaintiffs conferred that benefit.

73. Defendant has retained that benefit, and has not returned to Plaintiffs the bogus amount of "tax" that Plaintiff paid.

74. Defendant misrepresented the stated amount collected as being "tax" when the amount was false.

75. It would be unjust for Defendant to retain the benefit it received from Plaintiffs, and the balance of the equities favor Plaintiff.

76. Plaintiffs are entitled to restitution and/or disgorgement in the bogus amount of the collected "tax."

77. Defendant engaged in the same conduct with respect to the putative class members.

78. The putative class members likewise conferred this benefit on Defendant under similar circumstances, it would be unjust for Defendant to retain the benefit, and the putative class members are similarly entitled to restitution and/or disgorgement of the bogus amount of the collected "tax."

## COUNT III
## FRAUD BY PRESENT INTENT NOT TO PERFORM

79. Plaintiffs restate and incorporate by reference all preceding allegations.

80. When Defendant entered into its agreements with Plaintiffs and the Class Members to provide them telephone or related services, and to collect a stated rate and "applicable taxes" for same, Defendant had the present intent not to perform that obligation.

81. Defendant presently intended to improperly, and in non-performance and breach of the contract, increase the amount it collected, by calling it "tax," knowing that the amount it was collecting was not for "tax."

82. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members were damaged and harmed in the amount of the increase in their payment to Defendant by the improper amount of the "tax;" and also, by all costs and expenses incurred by them; attorney fees; and they are entitled to recover such monies, costs, attorney fees, and compensatory and punitive damages from the Defendant in an amount determined at trial.

## COUNT IV
## FRAUD AND FRAUDULENT/NEGLIGENT
## MISREPRESENTATION AND OMISSION

83. Plaintiffs restate and incorporate by reference all preceding allegations.

84. Defendant issued statements to Plaintiffs and the Class Members which included a stated amount labeled "tax."

85. The term "tax" means, to reasonable customers, an amount charged by the government which the customer is obligated by law to pay on the transaction.

86. It was material for Defendant to identify all known limitations, conditions and restrictions to its intentional act of charging for "tax," so as to make the term honest and not misleading.

87. It was especially material and required, for the term "tax" to be truthful, for Defendant to

13

inform customers of any facts to indicate that the stated amount listed as "tax" was not the correct amount for tax.

88. Instead of doing so, Defendant took the opposite approach.

89. Defendant did not identify the stated amount it listed as "tax" as, in truth, including an amount going to Defendant for its own benefit, not to any government agency, although it could have done so.

90. Defendant knew, intended to, and would regularly, keep money that it had falsely represented was collected as being "tax".

91. Defendant purposely did not disclose this, and misstated it.

92. By the foregoing, Defendant's representations to the named Plaintiffs and the putative class members were false.

93. Defendant knew, or in the exercise of reasonable diligence should have known, of the materiality, the falsity, and the misleading nature of this misrepresentation and this conduct, and was either purposeful, reckless, or negligent in that regard.

94. Defendant did the foregoing with the intent of misleading the Plaintiffs and the class into reliance, into accepting Defendant charging and taking from Plaintiffs' account, and the accounts of the class members, the stated amount listed as "tax."

95. Plaintiffs and the Class Members were justified in relying thereon, and not expecting Defendant would engage in conduct designed to collect a falsely labeled and improper stated amount.

96. As a direct and proximate result of the Defendant's actions, Defendant defrauded and proximately caused damage to Plaintiffs and the Class Members.

97. As a direct and proximate result of Defendant's actions, Plaintiffs and the Class Members

have suffered and incurred, and continue to suffer and incur, damages, including the amount of the bogus "tax" charge, deprivation of the use of that money, and other money lost, attorney fees, interest and costs.

## CLASS ALLEGATIONS

### A. Class Definition.

98. Plaintiffs seek to represent a class defined as follows:

All persons (hereafter "user") who: 1) paid Defendant for telephone or related services: 2) where Defendant charged the user "tax" in an amount more than the tax actually authorized by and paid to a government entity. The class period for the proposed class is the maximum time period as allowed by applicable law.

   a. Excluded from the Class are: (1) Defendant and its affiliates, officers or directors; (2) members of the judiciary and their staff to whom this action is assigned; and (3) Plaintiffs' counsel.

   b. Plaintiffs reserve the right to modify the definition of the Class pursuant to facts learned through further investigation and discovery.

### B. Class Certification under Fed. Rule 23(a) and (b)(3).

99. This class numbers in the thousands of persons and is so large that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

100. The exact number and identities of the members of the class are unknown at this time and can only be ascertained through discovery. Identification of the class members is a matter capable of ministerial determination from Defendant's records or other accessible sources.

101. The relatively small amounts of damage suffered by each class member make filing separate suits by each class member economically unfeasible.

102. Plaintiffs are similarly situated to the members of the class, have no conflict with the class, and will fairly and adequately represent all members of the class.

103. Plaintiffs have no relationship with Defendant other than as an adverse party in this case.

15

104. Plaintiffs' claims are typical of the class claims.

105. The claims, defenses, and injuries of the representative Plaintiffs are typical of the claims, defenses and injuries of the entire class, and the claims, defenses and injuries of each class member are typical of those of the entire class.

106. Common questions of law and fact apply to Plaintiffs' claims and the claims of the class, and those common questions predominate over individualized questions.

107. These common questions that are amenable to class wide resolution include:

    a. Whether Defendant entered into a contract with Plaintiffs and the putative class to provide telephone or related services;

    b. Whether Defendant's conduct breached that contract;

    c. Whether Defendant was unjustly enriched by the amount it collected for "tax" from Plaintiffs and the putative class members;

    d. Whether Defendant has a custom and practice of overcharging "tax" to its customers;

    e. Whether Defendant made fraudulent misrepresentations to the class members about the stated amount of "tax" listed on its statements;

    f. Whether Defendant engaged in a course of conduct designed to misrepresent or fraudulently conceal inflation of the "tax" to Plaintiffs and the putative class;

    g. Whether Defendant committed fraud against the Plaintiffs and putative class members, either by commission, omission, or both; and,

    h. Whether Plaintiffs and the putative class have suffered damage because of Defendant's conduct.

108. Proposed counsel for the putative class, Patrick J. Perotti and Patrick J. Brickman of Dworken & Bernstein, Co., LPA; Ruth Anne French-Hodson of Sharp Law; and Michael Wyatt of Mann Wyatt and Tanksley are knowledgeable and experienced in class, consumer fraud, and/or customer overcharge litigation and will fairly and adequately represent the interests of the proposed class as class counsel.

109. The questions of law and fact common to members of the proposed class predominate over any individual questions of law or fact affecting any member of the class, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

110. The prosecution of separate actions by each class member would create a substantial risk of inconsistent or varying adjudications with regard to individual class members that would establish incompatible standards of conduct for Defendant.

111. The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual class members which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests.

112. Further, the maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

113. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

114. No unusual difficulties are anticipated in the management of this case as a class action.

**DEMAND FOR JUDGMENT**

Plaintiffs individually, and on behalf of each member of the proposed class, request that the Court grant the following relief:

a. Enter an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action for the class defined above;

b. Enter an order appointing the below-listed counsel as counsel for the class, and appointing Plaintiffs as the representative Plaintiffs for the class;

c. Enter judgment in favor of plaintiffs and the class for their damages, and interest as provided by law; for punitive damages; and for costs;

d. Award plaintiffs and the class disgorgement and/or restitution;

e. Award plaintiffs and the class all expenses of this action, and require Defendant to pay costs and expenses of class notice and claims administration; and

f. Award such other or further relief in law or equity in favor of plaintiffs and the class and against Defendant as the Court finds just and appropriate.

Respectively Submitted,

/s/ *Ruth Anne French-Hodson*
Ruth Anne French-Hodson (Kansas Bar No. 28492)
**SHARP LAW, LLP**
4820 W. 75th St.
Prairie Village, Kansas 66208
Phone: (913) 901-0505
Fax: (913) 261-7564
Email: rafrenchhodson@midwest-law.com

Patrick J. Perotti, Esq. (Ohio Bar No. 0005481)(PHV to be filed)
Patrick J. Brickman (Ohio Bar No. 0088524)(PHV to be filed)
**Dworken & Bernstein Co., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: pperotti@dworkenlaw.com
pbrickman@dworkenlaw.com

18

                Michael J. Wyatt (Kansas Bar No. 23260)
                **MANN WYATT AND TANKSLEY**
                201 E. 1st Avenue
                Hutchinson, KS  67501
                Phone: (620) 662-2400
                Fax: (620) 662-2443
                Email: mike@mannwyatt.com

                *Counsel for Plaintiffs and the putative class*

Dated: January 19, 2024